DANIEL G. BOGDEN
United States Attorney
RICHARD UDELL
Senior Trial Attorney
Environmental Crimes Section
Department of Justice
KATHRYN C. NEWMAN
Assistant United States Attorney
333 Las Vegas Boulevard South
Fifth Floor
Las Vegas, NV 89101
702-388-6336

FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD
DEC - 3 2012
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:
DEPUTY

***UNITED STATES DISTRICT COURT***

***DISTRICT OF NEVADA***

***-oOo-***

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs<br><br>DPL Enterprises, Inc.<br>d/b/a Air Care Indoor Air Quality Specialists<br><br>Defendant. | Case No.: 2:12-cr-393-MMD-PAL<br><br>**PLEA MEMORANDUM** |

The United States, by and through Daniel G. Bogden, United States Attorney, Richard Udell, Senior Trial Attorney, Department of Justice, Environmental Crimes Section, and Kathryn C. Newman, Assistant United States Attorney, and the defendant, DPL Enterprises, Inc., and the defendant's attorney, Chris Austin, submit this Plea Memorandum setting forth the Plea Agreement between the aforementioned parties pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.



# I.

# PLEA AGREEMENT

The United States and the defendant have reached the following plea agreement, which is not binding on the Court:

## A. The Plea

The defendant, DPL Enterprises, Inc., d/b/a Air Care Indoor Air Quality Specialists (Air-Care), will plead guilty to a three-count Information, charging it with two counts of making a materially false statement, in violation of Title 18, United States Code, Section 1001(a), and one count of misbranding of a pesticide, in violation of Title 7, United States Code, Section 136j(a)(1)(E). Defendant expressly admits that by and through the acts of its officers and employees, acting within the scope of their responsibility and employment and at least in part for the benefit of the defendant, committed the crimes charged in the Criminal Information. The pleas of guilty in the District of Nevada are to be entered by defendant through a senior corporate officer acceptable to the government authorized by resolution of the defendant's Board of Directors to enter pleas of guilty on defendant's behalf and to appear and represent defendant at the plea and sentencing hearings.

## B. Additional Charges

The Environmental Crimes Section of the U.S. Department of Justice and the U.S. Attorney's Office for the District of Nevada ("United States") will bring no additional federal criminal charge or charges against the defendant in the District of Nevada arising out of the investigation in the District of Nevada which culminated in the Information and this Plea Memorandum and which are known to the government at the time of the signing of this agreement.

## C. Applicability of the Sentencing Guidelines

1. Defendant understands and acknowledges that, at sentencing, the Court is required to consider the United States Sentencing Guidelines, together with the other sentencing goals set forth in Title 18, United States Code, Section 3553(a). Defendant understands and

acknowledges that the United States Sentencing Guidelines, including Chapter Eight that provide guidance for the sentencing of corporate defendants, must be considered by the Court, except that pursuant to USSG §§ 8C2.1 and 8C2.10, the United States Sentencing Guidelines which pertain to the sentencing of organizations do not determine the fine range in cases involving environmental and obstruction crimes, including the making of false statements, and the use of false writings. Instead, the fine is to be determined under 18 U.S.C. §§ 3553 and 3571. All other sections of Chapter Eight of the Sentencing Guidelines that are applicable to corporate defendants are applicable to this case, including provisions for probation and community service.

**D. Other Sentencing Matters**

1. The parties have no agreement regarding a criminal fine. The defendant agrees that the court may impose a fine due and payable immediately upon sentencing.

2. The defendant agrees that pursuant to Title 18, United States Code, Section 3013(a)(2)(B), defendant will pay the special assessments on the day of sentencing. The total amount of the special assessments is Six Hundred and Fifty Dollars ($650).

3. The parties jointly recommend that the defendant be placed on organizational probation for a period of three (3) years from the date of sentencing pursuant to 18 U.S.C. § 3561(c)(1) and USSG §§ 8D1.1 and 8D1.2. The terms of probation shall include the following specific provisions, in addition to the Court's standard conditions: no further violations of federal criminal law including environmental law; payment in full of the monetary amounts set forth herein including all special assessments and fines; and establishment of an environmental and corporate compliance plan to assure that it is operating in full compliance with all environmental and occupational safety regulations. The Defendant shall submit a written copy of its proposed environmental and safety compliance program to the government and the Office of Probation within thirty (30) days of the entry of this Plea Agreement.

//

**F. Waiver of Appeal and Collateral Challenges**

1. In exchange for the concessions made by the United States in this plea agreement, the defendant knowingly and expressly waives the right to appeal any sentence that is imposed within the applicable Sentencing Guideline range as determined by the parties, further waives the right to appeal the manner in which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742, and further waives the right to appeal any other aspect of the conviction or sentence, including any order of restitution. The defendant reserves only the right to appeal any portion of the sentence that is an upward departure.

2. The defendant also waives all collateral challenges, including any claims under Title 28, United States Code, Section 2255, to his conviction, sentence, and the procedure by which the court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

**G. Additional Promises, Agreements, and Conditions**

1. In exchange for the United States entering into this agreement, the defendant agrees that (a) the facts set forth in Section IV of this Plea Agreement shall be admissible against the defendant under Fed. R. Evid. 801(d)(2)(A) in the following circumstances: (1) for any purpose at sentencing; and (2) in any subsequent proceeding, including a trial in the event the defendant does not plead guilty or withdraws the defendant's guilty plea, to impeach or rebut any evidence, argument or representation offered by or on the defendant's behalf; and (b) the defendant expressly waives any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Section IV of the Plea Agreement to the extent set forth above.

2. The parties agree that no promises, agreements, and conditions have been entered into other than those set forth in this plea memorandum, and not will be entered into unless in writing and signed by all parties.

//

//

**H. Limitations**

This Plea Agreement is limited to the Environmental Crimes Section of the Department of Justice and the United States Attorney's Office for the District of Nevada and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authority. This agreement does not provide or promise any waiver of any civil or administrative actions, sanctions or penalties that may apply, including but not limited to: fines, penalties, claims for damages to natural resources, suspension or revocation of his license, debarment, listing to restrict rights and opportunities of the Defendant to contract with or receive assistance, loans, and benefits from United States agencies, licensing, injunctive relief, proceedings under the False Claims Act relating to potential civil monetary liability or by the Internal Revenue Service relating to potential tax liability, or remedial action to comply with any applicable regulatory requirement.

**II.**

**PENALTY**

Counts 1- 2

1. The maximum penalty for violating the Federal Insecticide Fungicide and Rodenticide Act, in violation of Title 7, United States Code, Section 136j(a)(1)(E), is:

a. a maximum fine of either Two Hundred Thousand ($200,000) dollars, or up to twice the gross gain or loss resulting from the unlawful conduct, pursuant to 18 U.S.C. § 3571(c) and (d);

b. a term of probation of not more than five (5) years, pursuant to 18 U.S.C. § 3561(c)(1);

c. a special assessment of $125 per count of conviction, pursuant to 18 U.SC. § (a)(1)(B)(iii).

Count 3

2. The maximum penalty for making a material false statement in violation violating Title 18, United States Code, Section 1001, is:

        a. a maximum fine of either Five Hundred Thousand ($500,000) dollars, or up to twice the gross gain or loss resulting from the unlawful conduct, pursuant to 18 U.S.C. § 3571(c) and (d);

b. a term of probation of not less than one (1) nor more than five (5) years, pursuant to 18 U.S.C. § 3561(c)(1); and

c. a special assessment of Four Hundred ($400.00), pursuant to 18 U.S.C. § 3013(a)(2)(B).

3. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The parties agree that this matter does not involve restitution. Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

## III.

## ELEMENTS

1. The essential elements of the offense of false statement, in violation of 18 U.S.C. § 1001 are as follows:

First, defendant made a false statement in a matter within the jurisdiction of the Environmental Protection Agency ("EPA");

Second, defendant acted willfully, that is deliberately and with knowledge that the statement was untrue; and

Third, the statement was material to the EPA's activities or decisions.

2. The essential elements of a violation of the Federal Insecticide Fungicide and Rodenticide Act, in violation of Title 7, United States Code, Section 136j(a)(1)(E) are as follows:

First, the defendant acted knowingly;

Second, the defendant produced, distributed and sold a pesticide;

Third, the pesticide was misbranded; and

Fourth, the defendant knew that the pesticide was misbranded.

## IV.

## FACTS THAT SUPPORT GUILTY PLEA

1. The defendant is pleading guilty because the defendant is guilty of the charged offense.

2. In pleading to the offense(s), the defendant acknowledges that if the defendant elected to go to trial instead of entering this plea, the United States could prove facts sufficient to establish the defendant's guilt beyond a reasonable doubt.

3. The defendant specifically admits and declares under penalty of perjury that all of the facts set forth below are true and correct:

   a. The defendant was a Nevada corporation located at 3868 East Post Road, Las Vegas, Nevada. Richard Papaleo, a co-defendant, was the President and owner of DPL Enterprises which was also known as and did business under various names including Air Care Indoor Air Quality Specialists ("Air Care"). Co-defendant Michael Stanovich was employed as an Air-Care "Product Engineer" since 1991 and was in charge of Research and Development for the company. Air Care was in the business of manufacturing, marketing and selling air duct cleaning equipment, filters, and various chemical compounds, as well as running its own air duct cleaning and repair operation. Air Care's air duct cleaning operations serviced both commercial and residential customers.

   b. The government's investigation was initiated after the current maker of Sporicidin Disinfectant Solution, an EPA registered pesticide, alerted the EPA that its product was being sold in diluted form by Air Care without disclosing to customers that it had been diluted and repackaged by Air Care. Sporicidin is not registered or licensed to Air Care or defendant Papaleo. The pesticide was marketed and sold by the defendant with labels made by Air Care but which were not approved by the EPA or the maker of Sporicidin. Air Care also sold the diluted

product with the unapproved label in one gallon containers at a price cheaper than that sold by the manufacturer.

c. Sporicidin Disinfectant Solution is an EPA Registered Pesticide (registration number 8383) manufactured by CONTEC Incorporated, Spartanburg, South Carolina, and previously made by Sporicidin International. As set forth herein, the defendant and Air Care purchased Sporicidin Disinfectant Solution from these companies in gallon size containers and then diluted the contents at a rate of approximately 10 to 1 and repackaged it in gallon containers with an unauthorized label that represented it was original strength Sporicidin.

d. As an EPA approved pesticide, the Sporicidin label is registered with, approved by and subject to EPA control. The label may not be modified or printed without EPA approval. Further, pursuant to the instructions set forth on the EPA approved label for Sporicidin (the "EPA label"), the pesticide is not to be diluted for any use.

e. Neither Air Care nor Defendant Papaleo have obtained approval from the EPA to modify or print the EPA label, and the EPA label has never provided for dilution. In violation of the labeling, dilution and repackaging prohibition, Air Care produced, marketed and sold Sporicidin under various labels it created by copying significant portions of the EPA approved label. Using these fake labels, Air Care marketed Sporicidin Disinfectant Solution as "United States EPA registered" and an effective "anti-bacterial, tuberculocidal, virucidal, and fungicidal" with a "six month residual" effectiveness. The defendant was aware and directed the use of these labels over a period of years. These unauthorized labels made certain claims about the product being sold including:

> An effective cleaner, disinfectant and active deodorant for hospitals, clinics, medical and veterinary offices, laboratories, industrial clean rooms, homes, nursing homes, ambulance, hotels, restaurants, schools, airplanes, trains, boats, autos, buses, health spas and toilets.
>
> PASSES AOAC EFFICACY STANDARDS FOR INSTITUTIONAL AND HOSPITAL DISINFECTION
>
> Kills HIV-1 (Aids virus) in one minute." (See Sporocidin Bulletin No. 303)

> Kills Staphylococcus aureus, Salmonella choleraesuis, Pseudomonas aeruginosa, Methicillin resistant Staphylococcus aureus (MRSA), Vancomycin resistant Enterococcus faecium (VRE) and Trichophyton metagrophytes (Athlete's Foot fungus) in three minutes.
>
> Kills Vegetative organisms including Streptococcus pyogens, Streptococcus salivarius, Escherichia coli, **Herpes simplex types 1/F and 2/G (oral, ocular, and gential [sic], Influenza A, (Japan 305/57 Asian strain), Pellicularia filamentosa, Penicillium variable, Vaccinia, Canine parvovius, Cytomegalovirus, Coronavirus and Polio type 1 viruses and Mycobacterium tuberculosis in ten minutes at 20°C/68°of [sic] above.

The EPA label and the Air Care label also stated that "[i]t is a violation of U.S. Federal Law to use this product in a manner inconsistent with its labeling." Air Care's primary customers were companies engaged in cleaning air ducts. Air Care also routinely used the diluted Sporicidin in its own air duct cleaning service calls done in the vicinity of Las Vegas, Nevada. Air Care's advertising video available to view through the Air Care website represented that Air Care's use of disinfectants made it preferable to the competition. Air Care's internet marketing also represented that its clients included both homes and facilities including: "hotel/casinos, hospitals, factories, utility plants, schools and banks, along with general commercial and retail buildings."

    f.  Correspondence exists between the defendant and individuals at both CONTEC and Sporicidin International regarding Air Care's use of Sporicidin. For example, by letter dated June 1, 1995, the inventor and technical director of Sporicidin wrote to defendant Papaleo indicating that he had received a "Sporicidin" label sent to him by the defendant that he assumed the defendant was using to market the product it was purchasing from Sporicidin International. At the time, Air Care was not diluting the pesticide, but printed a label that stated that the product was distributed by D.P.L. Enterprises and should be diluted 10 to 1 for use in fogging air ducts. The letter advised the defendant that D.P.L. Enterprises was required to obtain EPA approval of a registered label. The letter to the defendant further stated that "[t]he current Sporicidin Disinfectant EPA label registration must be adhered to if the product is to be in compliance. In this respect, I note that your label directs dilution with water and/or the addition of

Sporicidin to another product. The EPA registration of Sporicidin Disinfectant does not permit dilution with water or another aqueous product." Finally, the defendant was notified: "Advertising or sale of Sporicidin Disinfectant not properly labeled according to current registrations is illegal and can be subject to EPA actions."

        g.    On June 2, 1995, the defendant responded that it was his intention to comply with all labeling and mixing instructions and that he was previously unaware that a supplemental EPA registration was required. The defendant stated that somehow Air Care had become confused since another Sporicidin product involved dilution. A June 3, 1999, fax cover sheet found in the defendant's files from the defendant to Sporicidin International states: "We purchase your product in gallon containers with your labels. This is how we re-sell product. See attached copy of your label." However, that was not actually Air Care's practice in 1999, or thereafter.

        h.    On February 23, 2010, EPA CID and the Federal Bureau of Investigation (FBI) consensually monitored a telephone call between a representative of CONTEC and Mike Stanovich, Research and Development Manager for Air Care. Stanovich was asked during that call if he was aware of diluted and repackaged Sporicidin Disinfectant Solution being introduced into commerce from a source in Nevada. Stanovich denied knowing that diluted product was being sold, even though he was aware of the dilution process. Similarly, according to a letter dated April 4, 2002, that was discovered by law enforcement officers during the execution of the search warrant at Air Care, Stanovich communicated with an employee at Sporicidin International about whether he was aware of who was selling diluted Sporocidin. Stanovich sent a memorandum to defendant Papaleo about the letter that stated: "I told [Sporicidin's representative that] we followed the label instructions."

        i.    On November 10, 2009, Special Agents with EPA Criminal Investigation Division (CID) purchased four gallons of what Air Care was marketing as Sporicidin Disinfectant Solution from a company in San Jose, California, at a price cheaper than that sold by

CONTAC. This third party air duct cleaning supply company was a customer of Air Care and purchased the product directly from Air Care over the telephone in the presence of an EPA agent. The four gallons arrived three days later and were then analyzed by the EPA's National Enforcement Investigations Center (NEIC) laboratory in Lakewood, Colorado. The NEIC laboratory analysis found that the product sold by Air Care was, in fact, diluted with water. The active ingredient strength of the product purchased from Air Care was found to be approximately 1/10 of the authentic Sporicidin Disinfectant Solution manufactured and sold by CONTEC and sold with the EPA registered label. The labeling on the container sold by Air Care contained the "Sporicidin" logo and an unauthorized label made by Air Care.

j. On February 23, 2010, EPA CID and the Federal Bureau of Investigation (FBI) consensually monitored a telephone call between a representative of CONTEC and Mike Stanovich, Research and Development Manager for Air Care. Stanovich was asked during that call if he was aware of diluted and repackaged Sporicidin Disinfectant Solution being introduced into commerce from a source in Nevada. Stanovich denied knowing that diluted product was being sold, even though he was aware of the dilution process.

k. On February 23, 2010, Special Agents with EPA CID and the FBI executed a search warrant at Air Care in Las Vegas. Several versions of the fake Sporicidin labels created and used by Air Care were obtained during the investigation as well as the original label on the original product. The original Sporicidin Disinfectant Solution containers found at Air Care read, in part; "DO NOT DILUTE OR MIX WITH OTHER CHEMICALS." Both the real label and the unauthorized label made by Air Care for its diluted product stated that the active ingredient included Phenol in a concentration of 1.56 percent. However, after dilution, this was not accurate for the containers sold to Air Care's customers. The defendant did not notify customers purchasing the chemical from Air Care or client's purchasing duct cleaning services from Air Care that the Sporicidin had been diluted or that the label was not accurate. Business records indicate that between April 2005 and February 2010, Air Care purchased approximately 864 gallons of

Soricidin Disinfectant Solution from the manufacturer and sold approximately 6,312 gallons of diluted product. The total sales revenue during the period 2005 to 2010 based on the sale of the fake product was approximately $100,000.

   l. During that execution of the search warrant, Stanovich consented to an interview with law enforcement officers. After falsely denying knowing of the dilution and false labeling, Stanovich admitted to EPA-CID and FBI Special Agents that he was aware of the dilution and repackaging of counterfeit Sporicidin Disinfectant Solution at Air Care. Stanovich admitted that he assisted in the manufacturing of counterfeit Sporicidin Disinfectant Solution labels. Stanovich also stated to the Special Agents that Papaleo had been directing Air Care employees to dilute and repackage legitimate Sporicidin Disinfectant Solution for at least ten years. Stanovich admitted that he assisted Papaleo in this illegal activity and that he knew it was improper. Stanovich was aware of the need for products like Sporicidin to be registered as a pesticide with the U.S. Environmental Protection Agency. Stanovich acknowledged that he was aware that the label on legitimate Sporicidin Disinfectant Solution stated, in part, that it should not be diluted or mixed with other chemicals.

   m. Defendant Papaleo was interviewed by EPA CID Special Agents at the time the search warrant was executed at Air Care on February 23, 2010. Defendant Papaleo denied that Air Care was diluting Sporicidin prior to being relabeled and repackaged for resale knowing that this was not true. He claimed the re-labeling was for "branding" purposes only.

   n. However, Air Care employees were producing the diluted Sporicidin product at Papaleo's direction, and then marketing, selling and transporting it with various labels made and used by Air Care knowing that neither he nor his company had obtained EPA approval to manufacture the product or use these labels in connection with the diluted product being made and sold by Air Care. The defendant knew that the Sporicidin labels made and used by Air Care did not disclose that the pesticide was a diluted product. Specifically, the pesticide produced and labeled by Air Care was misbranded in at least the following ways: (a) neither the product nor the

label produced and sold by Air Care was registered with or approved by the EPA; (b) the label represented that the pesticide contained an active ingredient in a higher concentration than the product actually contained; (c) the label bore an outdated and incorrect establishment manufacturer number which misrepresented the identity of its producer; and (d) the label contained a trademarked brand-name when in truth and in fact the contents contained a 10:1 dilution of Sporicidin and as such, the contents were not the same product as the product represented on the label and the contents were not manufactured by Sporocidin as falsely represented on the label.

## V.

## ACKNOWLEDGMENT

1. The defendant, acknowledges by the signature of the defendant's representative below that the defendant has been apprised of this Memorandum of Plea Agreement, that the defendant understands the terms and conditions, and the factual basis set forth herein, that the defendant has discussed these matters with the defendant's attorney, and that the matters set forth in this memorandum, including the facts set forth in Part IV above are true and correct.

2. The defendant acknowledges that the defendant has been advised, and understands, that by entering a plea of guilty the defendant is waiving, that is, giving up, certain rights guaranteed to the defendant by law and by the Constitution of the United States. Specifically, the defendant is giving up:

a. The right to proceed to trial by jury on the original charges, or to a trial by a judge if the defendant and the United States both agree;

b. The right to confront the witnesses against the defendant at such a trial, and to cross-examine them;

c. The right to remain silent at such trial, with such silence not to be used against the defendant in any way;

d. The right, should the defendant so choose, to testify in the defendant's own behalf at such a trial;

e. The right to compel witnesses to appear at such a trial, and to testify in the defendant's behalf; and

f. The right to have the assistance of an attorney at all stages of such proceedings.

3. The defendant, the defendant's attorney, and the attorney for the United States acknowledge that this Plea Memorandum contains the entire agreement negotiated and agreed to by and between the parties, and that no other promise has been made or implied by either the defendant, the defendant's attorney, or the attorney for the United States.

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

DANIEL G. BOGDEN
United States Attorney
District of Nevada

[signature] 12-3-12
RICHARD A. UDELL Date
Senior Trial Attorney
Environmental Crimes Section
U.S. Department of Justice

[signature] 12/3/12
KATHRYN C. NEWMAN Date
Assistant U.S. Attorney

//

//

//

//

//

I am the authorized representative of defendant DPL Enterprises, Inc. I have read the entire Plea Agreement including the Joint Factual Statement and discussed it with the corporation's attorney. I understand all of its terms and the corporation is entering into it knowingly and voluntarily.

12-3-12

RICHARD F. PAPALEO Date
President and owner of DPL Enterprises, Inc

I have carefully reviewed every part of this Plea Agreement, including the Joint Factual Statement and the Guidelines Stipulation, with my client. To my knowledge, the corporation's decision to enter into this Plea Agreement is an informed and voluntary one.

3 Dec 2012

F. CHRISTOPHER AUSTIN, Esq. Date
Counsel to Defendant